

33 C.C.P.A. (Patents)

## In re WARP.

### Patent Appeal No. 5100.

Court of Customs and Patent Appeals.
March 4, 1946.

Rehearing Denied May 3, 1946.

Ernest A. Wegner, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the decision of the Primary Examiner rejecting claims 28 to 35, inclusive, of appellant's application for a patent relating to laminated flexible transparent material. Appellant has here appealed from the decision of the board.

In this court appellant moved to dismiss his appeal as to claim 30, which motion is hereby granted.

Appellant's application discloses and claims a laminated transparent material which, as a substitute for glass, has numerous uses. It is constructed by first coating the wires of large mesh wire netting with a plastic material, preferably a polymerized vinyl compound, in such manner that the wires are completely coated and the meshes between the wires are left open, and then placing a preformed sheet of transparent flexible material on each side of said netting and securing the transparent sheets to each other and to the coated wires by means of pressure and heat, after coating the inner surfaces of the said transparent sheets with a solvent. Appellant emphasizes the importance of using a large mesh netting having wires of extremely small diameter the strands of which run not more than four meshes to the inch.

The preliminary coating of the wires with the vinyl compound is stated to serve several purposes. It serves as a binder for the wires at the intersections and as a cushion to prevent the wires from cutting through the preformed sheets when bent or when temperature changes cause expansion, and serves as an aid in bonding the two outside transparent sheets. It also insures complete and effective covering of the wires at the point of crossing by

forming wedge-like protrusions on opposite sides of the wires in the plane of the finished material, and strengthens the sheets where they curve around the wires of the netting. The said protrusions are said to prevent formation of air spaces or air pockets at the wire crossings.

The laminated material thus produced is used extensively in greenhouses, hotbeds, poultry and livestock houses, sun porches, solariums, and storm windows and doors, and for some time prior to and during the last world war was very extensively used here and abroad in the construction of barracks and powder plants. While having much of the light-admitting qualities of glass it is flexible, not easily damaged in shipment or use, and has the quality of affording transmission of ultraviolet rays.

Claim 28, regarded as illustrative, reads as follows: "28. A laminated material comprising a woven, large mesh, flexible netting forming the base lamina, an all-over permanent coating of a transparent plastic compound for the strands only of said netting, the meshes of said netting being left open, said coating being of sufficient thickness to provide a cushion-like covering for the strands and a binder for the intersections of the strands to aid in holding the strands against displacement, a preformed sheet of transparent flexible material applied to each side of said netting and secured to said netting by an integrated bond with the coating on the strands of said netting and by an integrated bond with one another through the meshes of said netting throughout substantially the entire area of each mesh."

The rejection by the examiner was upon the following references: Jenkins, 1,327,-281, January 6, 1920; Segall, 1,322,631, November 25, 1919; Hopkinson, 1,777,309, October 7, 1930; Dreyfus, 1,950,662, March 13, 1934; Eichengrun, 1,985,771, December 25, 1934; Hosking, 2,028,670, January 21, 1936; Brush, 1,686,649, October 9, 1928; Waters, 2,109,558, March 1, 1938; Convert (French), 483,064, March 1, 1917.

In denying the appealed claims the examiner relied chiefly upon what he regarded as the basic references, Dreyfus and Eichengrun. He referred to the Jenkins reference as showing wire mesh fabric having wide spaces between the wires to which is applied "lamina of transparent plastic by solvent applied to the wire mesh." He pointed out that Eichengrun refers to "wire cloth coated with transparent layers of cellulose derivatives" which might be made by "laminating the wire cloth with finished layers or films of the material," and that the Dreyfus patent discloses the application of a vinyl resin as a protective coating to the mesh fabric, which might either be of wire or a fibre material. Dreyfus then applies the cellulose derivative by dipping or brushing to the extent that the plastic fills the interstices and produces a "flexible glass substitute that is strong and resistant to weathering." Obviously the dipping or brushing results in filling the interstices between the wires only where the meshes are comparatively small.

Other references were cited by the examiner to show lesser important details but they, for present purposes, need not be discussed here.

The element of claim 34 specifying that the strands of the wire mesh should have a diameter of approximately "one-one-hundredth" of an inch and the limitation in some of the other claims relating to the size of the strands, although not mentioned by the board, were properly stated by the examiner to be "matters of degree." It would seem to be obvious to use small wires if a high degree of light-admitting quality was desired.

The board seemed to regard Jenkins as the most pertinent reference. It said:

"It is our view that the Jenkins patent teaches all the essential details of the claims. We do not believe any one operating under the Jenkins patent should be prohibited from using a softener of such character that it could be referred to as a cushion of adhesive to bind the wires together at their outer sections. To adhere opposed transparent sheets to the wires and throughout the mesh area is an obvious matter.

"In view of the opinion of the examiner on the effect of the commercial success of applicant's device we do not consider it necessary to remand the case for further consideration of the supplemental affidavit on commercial use. We agree with the examiner that applicant has not made an inventive advance over Jenkins where several of the references show a solid mass of transparent material throughout the area of each mesh."

In this court appellant, in order to distinguish from the prior art in what he claims to be a patentable sense, relies largely upon the application of what he styles a compar-

atively heavy coating of his stated material on all of the surface of the wires of the netting. He states that his wire coating material remains permanently, somewhat yieldable and resiliently pliable, and serves the purposes hereinbefore stated, and that the coating of the cited reference, Jenkins, is intended to serve and does serve a different purpose from appellant's coating in that it is the patentee's means of placing a solvent on the inner sides of the outside laminations which will soften the same and have the tendency of filling up the spaces around the wires and causing the two sheets of laminated material to adhere together at points near the wire crossings but not elsewhere.

While Jenkins used his wire-coating solvent for the purpose of adhesively connecting the laminations together and to bind them tightly around the wires, he knew that the use of this material might affect the transparency of the article when completed. He therefore did not contemplate having the laminated layers in the wide spaces between the wire intersections adhere together. His teachings were to the effect that since he desired the highest degree of transparency it was essential to use that amount of solvent which was necessary to cause adhesion of the laminated sheets only at the points where the wires crossed.

It is argued here that the material used by Jenkins does not furnish a cushion and was not intended to do so and that since he preferred using as little as was practicable, because it would interfere with transparency, he has not taught the importance of so initially coating the wires with a transparent material which would form a cushion, strengthen the structure, completely fill the interstices around the wire crossings, and serve as a suitable basis upon which to superimpose the outside laminations.

Appellant urges that Jenkins' solvent would volitalize and disappear after it had served its purpose as a softener, and that such volitalization would result in leaving open spaces around the wires and thus cause irregularities and deformities at these places. He criticises the board for having pointed out that in the Jenkins patent, in describing the solvent, the patentee used the phrase, "material adapted to soften and 'weld' celluloid," and argues in effect that this language should not be regarded as suggesting any more than the use of a solvent or plasticizer which does not form a permanent, separate and distinct coating.

The board reasoned that since Jenkins taught that his softening material injuriously affected transparency this would indicate that the solvent remained around the wire intersections and did not completely leave the structure by volitalization.

The examiner, though putting it in the form of a quære, was of the opinion evidently that it would not "involve inventive genius to prefer solidarity and continuity of lamination over optical perfection and to realize that preference by rejecting the precaution of Jenkins."

Appellant also argues that his coating material (which he does not urge is a new material in this phase of the art), when applied as he teaches, will, at the wire crossings, have a tendency to be pressed outwardly and thus form wedges between the outside laminations, and some of the claims are drawn to define this structure. It was the view of the tribunals of the Patent Office that wedges were formed in the identical manner in the Jenkins structure and that increasing this tendency as appellant proposes would not amount to invention.

While the board held that the Jenkins patent teaches all the essential details of the appealed claims it also was of the view that one operating under the Jenkins patent should not be prohibited from using a softener of such character that it might have a cushion effect as well as serve as a binder over all of the wires of the netting.

■ Other cited references show all of the details of appellant's structure, such as large mesh netting, as in Hosking, and without discussing some of the references because of their character as above suggested, the board concluded that in view of the prior art suggestions what appellant has produced as defined by the appealed claims does not amount to invention. We agree with this view of the board for the reasons stated by it.

Appellant, at the proper time, submitted his affidavit which went into great detail with reference to the need for such an article as he had produced and pointed to the fact that such material could not be obtained on the market until after his product appeared. The affidavit makes a strong showing of commercial success which was allegedly obtained with negligible advertising. A very large portion of the sales be-

ginning in 1936 was to the government for war emergency purposes. From 1936 up to the time of making the affidavit in May, 1944, owing in part to the scarcity of materials, his manufacturing company was unable to fill about 50 per cent of the orders. Appellant urges that the article described in the instant application, sold under the trade name of "Wyr-O-Glas" is recognized by the public as possessing new and valuable qualities.

In close cases, commercial success, depending somewhat upon what brought it about, may be regarded as having weight on the question as to whether or not invention was involved in producing the thing for which patent application is made, but such success is rarely if ever regarded as a controlling factor and certainly should not be so regarded here.

Unquestionably, appellant's Wyr-O-Glas, combining as it does several important features of the prior art, is a product of splendid quality and probably an improvement on the products made in accordance with the teachings of the prior art references, but we are not convinced that the tribunals of the Patent Office were in error in concluding that in view of the teachings of such art appellant has not done anything more than that which might be expected from one skilled in the art when the problems involved were presented to him.

The decision of the Board of Appeals which relates to the claims here involved is affirmed, except as to claim 30, the appeal relating thereto being dismissed upon motion of appellant.

Affirmed.